UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

In re Resideo Technologies, Inc.,
Derivative Litigation

Case No. 21-cv-1965 (WMW/ECW)

**AMENDED[1] ORDER GRANTING
PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT**

---

Plaintiffs, on behalf of themselves and the proposed Settlement Class,[2] seek final

approval of settlement against Defendants Resideo Technologies, Inc. (Resideo); Michael

G. Nefkens; Joseph D. Ragan, III; Niccolo de Masi; Paul Deninger; Roger Fradin; Jack

Lazar; Nina Richardson; Andrew Teichl; and Sharon Weinbar.  (Dkt.  42.)  For the reasons

addressed below, the Court finds good cause to grant Plaintiffs' unopposed motion for final

approval and to enter final judgment in this case.

## BACKGROUND

Plaintiffs and Defendants entered into a Stipulation and Agreement of Settlement

dated February 7, 2023 ("Stipulation"), which provides for a complete dismissal with

prejudice of the claims against Defendants in this action, as well as a release of claims on

---

[1]     The Amended Order clarifies and corrects certain aspects of the previous order and judgment, which referenced *In re Resideo Techs., Inc., Sec. Litig.*, No. 19-cv-2863 (WMW/BRT), 2022 WL 872909 (D. Minn. Mar. 24, 2022)—a separate but parallel class action lawsuit. *See* Fed. R. Civ. P. 60(a) (A district court "may correct a clerical mistake or mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.")

[2]     Unless otherwise indicated, capitalized terms in this Order have the meanings ascribed to those words in the parties' February 7, 2023 Stipulation and Agreement of Settlement.

the terms and conditions set forth in the Stipulation.  The Settlement provides that Plaintiffs

have agreed to settle all claims in this Action in exchange for the implementation of critical

corporate governance reforms designed to, among other things, improve board oversight,

ensure the accurate disclosure of information to the markets, and reduce the risk of legal

and regulatory exposure.  The parties reached the settlement following extensive

negotiations among counsel that included mediation before now-retired United States

Magistrate Judge Becky Thorson.

On February 13, 2023, the Court granted Plaintiffs' unopposed motion for

preliminary approval of the Settlement.  In doing so, on a preliminary basis, the Court

certified the Settlement Class, approved the Settlement and approved the proposed notice

plan.  To date, two objections to the Settlement have been received, but neither of these

objectors asked to be excluded from the Settlement Class.  On June 22, 2023, the Court

held a Settlement Hearing to determine whether the Settlement should be finally approved.

Plaintiffs seek a determination that the Settlement is fair, reasonable, and adequate;

approval of the Plan of Allocation; final certification of the Settlement Class; and an award

of attorneys' fees, litigation expenses and service awards.

## ANALYSIS

### I.       Motion for Final Approval

A class action cannot be dismissed or settled without the approval of the district

court.  *See* Fed. R. Civ. P. 23(e).  "Under Rule 23(e) the district court acts as a fiduciary

who must serve as guardian of the rights of absent class members." *Kloster v. McColl*, 350

F.3d 747, 751 (8th Cir. 2003) (internal quotation marks omitted).  As such, a district court

may approve a class action settlement only if the court determines that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A class-action settlement agreement is "presumptively valid." *Ortega v. Uponor, Inc.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (internal quotation marks omitted).

### A.     Fairness, Reasonableness and Adequacy

When determining whether a class-action settlement is fair, reasonable and adequate, a district court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). A district court also should consider "(1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of

opposition to the settlement." *Ortega*, 716 F.3d at 1063 (internal quotation marks and brackets omitted).

### 1.    Adequacy of Representation

The Court first considers whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This determination turns on whether "(1) the class representatives have common interests with members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982).

Here, the record reflects no conflicts between Lead Plaintiffs and the Settlement Class, whose claims are aligned. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459–60 (2013) (observing that the class would "prevail or fail in unison" because claims were based on common misrepresentations and omissions). Co-Lead Counsel are qualified and experienced in derivative litigation and extensively litigated this case. The Lead Plaintiffs also have supervised and participated in the litigation by communicating with counsel, reviewing pleadings and motions, and participating in settlement discussions.

Accordingly, the record reflects that Lead Plaintiffs and Co-Lead Counsel have adequately represented the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(A).

### 2.    Arm's Length Negotiations

The Court next considers whether the Settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Here, the Settlement was reached after months of arm's-length negotiations between experienced counsel, including a full-day mediation before now-

retired Magistrate Judge Thorson.  The record also reflects that Lead Plaintiffs and Co-Lead Counsel knew the strengths and weaknesses of their claims at the time of the settlement negotiations based on extensive investigation, research, discovery and litigation. For these reasons, the Court finds that the Settlement was negotiated at arms' length and under circumstances demonstrating a lack of collusion.

### 3.    Adequacy of Relief

The Court next considers whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" among other relevant circumstances.  Fed. R. Civ. P. 23(e)(2)(C).  Considerations relevant to this factor include "the merits of the plaintiff's case weighed against the terms of the settlement" and "the complexity and expense of further litigation."  *Ortega*, 716 F.3d at 1063 (internal quotation marks and brackets omitted).

As reflected in Plaintiffs' submissions, continued litigation would involve risks that Plaintiffs would be unable to establish the elements of their claims and would impose additional litigation costs and delays on the Settlement Class.  In the context of the alleged wrongdoings, the Settlement provides that the Company will spend $300,000 per year for five years to continuously improve oversight to the Company's risk management and implementation of terms that are specifically designed to protect and preserve the benefits of its shareholders.

The Settlement also allows the Settlement Class to avoid the risks, costs, uncertainties and delays of continued litigation, as detailed in Plaintiffs' submissions.  *See Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) (observing that

"many of the immediate and tangible benefits" of settlement would be lost through continued litigation, making the proposed settlement "an attractive resolution" of the case); *see also Allred on behalf of Aclaris Therapeutics, Inc. v. Walker*, Nos. 19-CV-10641 (LJL), 19-cv-10876 (LJL), 2021 WL 5847405, at *4 (S.D.N.Y Dec. 9, 2021) ("Reforms addressing the issues giving rise to the derivative suit are exactly the type courts deem to confer a substantial benefit on the company"). These factors support finding that the Settlement provides adequate relief to the Settlement Class.

The Court also considers the complexity and expense of continued litigation. *Ortega*, 716 F.3d at 1063. As described in Plaintiffs' submissions, Defendants likely would advance numerous defenses and, therefore, continued litigation would result in considerable time and expense. If the Settlement is approved, this case will be resolved before the parties invest time and resources on further litigation, including summary judgment, trial, and any possible appeals. The complexity and expense of continued litigation are significant.

The adequacy-of-relief factor also requires the Court to consider "the effectiveness of any proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the Reforms are specifically designed to minimize the probability of violations of fiduciary duties and federal securities laws in the future. *See Mills v. Electro Auto-Lite Co.*, 396 U.S. 375, 396-97 (1970); *see also Friedman v. Baxter Travenol Labs., Inc.*, No. Civ. A. 8209, 1986 WL 2254, at *5 (Del. Ch. Feb.18, 1986) (observing that achievement of specific, tangible and long-term corporate governance reforms in stockholder litigation is valuable). Resideo has agreed to maintain these Reforms for a minimum of three years,

6

which is a meaningful amount of time to ensure that the measures become embedded in the company's policies, practices and corporate culture. *Cohn v. Nelson*, 375 F. Supp. 2d 844, 850 (E.D. Mo. 2005) (finding that corporate governance measures which must be in place for no fewer than three years will "provide meaningful ways of avoiding the problems [the company] experienced in the recent past").

The Court also considers "the terms of any proposed award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(C)(iii). As addressed in Part II of this Order, the proposed attorneys' fee award is $1,600,000, which is reasonable in light of the efforts of counsel and the risks involved in this litigation. Moreover, the Settlement is not contingent on the Court's approval of the requested attorneys' fees award.

The Court also must determine whether the Settlement is fair in light of any other agreements between the parties made in connection with the Settlement. Fed. R. Civ. P. 23(e)(2)(C)(iv). Here, the parties have not identified any such agreements that undermine the fairness of the Settlement.

For these reasons, it appears to the Court that the Settlement provides adequate relief to the Settlement Class.

### 4.      Equitable Treatment of Class Members

The Court next considers whether the Settlement treats members of the Settlement Class equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). The Settlement provides reforms to the Company's corporate governance. To date, only two investors have objected to the Settlement. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (providing that the number of class members who object to or opt out of the settlement is

relevant to whether the settlement is reasonable).  The two objections pertain to the Settlement's diversity requirements but are procedurally deficient as they do not meet the requirements of the Settlement notice.  The Court, therefore, need not address them, and the objections are overruled.  *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752, 2020 WL 4212811, at *14 (N.D. Cal. July 22, 2020), aff'd, 2022 WL 2304236 (9th Cir. June 27, 2022) (finding that the court need not consider noncompliant objections that failed to provide required information).  The Court, nonetheless, observes that diversity requirements on boards are a proper component of the Settlement terms.  *See In re Conduent Inc. S'holder Deriv. Litig.*, 1:20-cv-10964-MKV (S.D.N.Y. June 10, 2022) (Declaration and Stipulation of Settlement) (Dkt. 43 at 16, 25-28, 73-74) (settlement required company to consider at least one member of an unrepresented community whenever the board seeks candidates for the nomination of non-incumbent directors).  For these reasons, the Court is satisfied that the Settlement treats members of the Settlement Class equitably relative to each other.

In summary, after considering all of the relevant factors, *see* Fed. R. Civ. P. 23(e)(2), the Court concludes that the Settlement is fair, reasonable and adequate.

### B.    Certification of Settlement Class

Plaintiffs assert, for purposes of settlement only, that the Settlement Class meets all the certification requirements of Rule 23(a) and (b)(3), Fed. R. Civ. P.  The Court agrees.

The record reflects that the Settlement Class is sufficiently numerous such that joinder would be logistically impossible.  Resideo's common stock was actively traded on the New York Stock Exchange during the Class Period, and Resideo had approximately

122 million shares of common stock issued and outstanding during the Class Period. *See, e.g., Tile Shop*, 2016 WL 4098741, at \*3 (concluding that the class met the numerosity requirement because 5.175 million shares of stock were sold in a public offering). There also is a commonality of interests between the Settlement Class Members, including both questions of law and questions of fact. The Lead Plaintiffs' claims are typical of those of the Settlement Class Members, as all claims arise from the same alleged course of conduct by Defendants. The Lead Plaintiffs and their counsel are adequate representatives and have no conflicts with the proposed Settlement Class. A class action also is a superior method of resolving the relatively modest claims of the Settlement Class Members, and it promotes judicial efficiency by resolving the claims of thousands of shareholders in a single case.

Accordingly, the Court finally certifies the Settlement Class for settlement purposes and finds that the certification requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied.

## C.     Adequacy of Notice

Due process under Rule 23 requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175–76 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort."). The mechanics of the notice process are left to the discretion of the district court and are subject only to the "reasonableness" standards required by due process. *See Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975); *see also Tapia v. Zale Del. Inc.*, No. 13-cv-

1565 (PCL), 2017 WL 1399987, at *4 (S.D. Cal. April 18, 2017) (same); *Rosenburg v. I.B.M.*, No. 06-cv-0430 (PJH), 2007 WL 128232, *5 (N.D. Cal. Jan. 11, 2007) (providing that notice should inform class members of essential terms of settlement, including claims procedures and the right to accept, object or opt-out of settlement).

Here, the Claims Administrator began sending copies of the Notice Packet to potential Settlement Class Members on February 13, 2023. In addition, a Summary Notice was published in *The Wall Street Journal* and on *PR Newswire*. The substance of the Notice fully apprised Settlement Class Members of their rights. Under Rule 23(e), notice to class members "must generally describe the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (internal quotation marks and alterations omitted). The Notice provided potential Settlement Class Members with material information about the terms of the Settlement such as, (i) the payment of Plaintiffs' attorneys' fees; (ii) the facts and considerations that caused the Settling Parties and their respective counsel to conclude that the proposed Settlement is fair, reasonable, adequate and in Resideo's best interests; (iii) the procedure for objecting to the proposed Settlement; and (iv) the date, place, and time of the Settlement Hearing. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (holding that notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.")

The Court concludes that the Notice provided in this case complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

II.        **Attorneys' Fees, Litigation Expenses and Service Awards**

As part of the final approval of settlement, Plaintiffs seek attorneys' fees in the amount of $1,600,000, and service awards in the aggregate amount of $15,000 to compensate Named Plaintiffs.

A.        **Attorneys' Fees**

An award of attorneys' fees in a class-action lawsuit is within the discretion of the district court. *Petrovic*, 200 F.3d at 1157; *see also* Fed. R. Civ. P. 23(h). To determine whether a requested fee is reasonable, the Court considers following factors: (1) the benefit conferred; (2) the risks to which plaintiffs' counsel were exposed; (3) the novelty and difficulty of the issues; (4) the time, labor and skill required; (5) the reaction of the class; and (6) the comparison between the requested percentage and percentages awarded in similar cases. *In re Resideo Techs., Inc., Sec. Litig.*, No. 19-cv-2863 (WMW/BRT), 2022 WL 872909, at *6 (D. Minn. Mar. 24, 2022). Where the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference. *Cohn*, 375 F. Supp. 2d at 862; *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (holding that an agreed-to fee is an ideal situation because "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."); *In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 568–70 (7th Cir.1992) (approving agreed-to fees that were negotiated based on market rates).

1.        **Benefit Conferred on Settlement Class**

While the economic value of the Reforms cannot be calculated with precision, empirical studies and survey literature show a correlation between strong governance and

stock performance.  *See In re Schering-Plough Corp. S'holders Deriv. Litig.*, No. CIV. A. 01-1412, 2008 WL 185809, at \*5 (D.N.J. Jan. 14, 2008) ("The adoption of the corporate governance and compliance mechanisms required by the settlement can prevent breakdowns in oversight that would otherwise subject the company to the risk of regulatory action . . . . Effective corporate governance can also affect stock price by bolstering investor confidence and improving consumer perceptions").  The attorneys' fees requested, therefore, reflect only a portion of the value of the benefit the Settlement confers on Resideo and its shareholders.

Moreover, courts have endorsed the agreement of the amount of attorneys' fees to be paid to plaintiffs' counsel in representative litigation.  *E.g., Hensley*, 461 U.S. at 437. Where the fee negotiations were conducted at arm's-length and there is no evidence of collusion, courts accord "substantial deference" to the parties' agreement.  *Cohn*, 375 F. Supp. 2d at 861.

### 2.     Risks to Plaintiffs' Counsel

Plaintiffs' counsel worked on a contingent basis and have received no compensation to date.  As addressed above and as detailed in Plaintiffs' submissions, Plaintiffs' counsel faced significant litigation risks, including the uncertainty of obtaining class certification and establishing Plaintiff's claims.  Even if Plaintiffs were to prevail at trial, they would face the risks associated with any appeal.  The substantial risks to Plaintiffs' counsel support the requested award of attorneys' fees.

### 3.      Difficulty of Legal and Factual Issues

Under both Minnesota and federal law, the purpose of a derivative action is "to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of the 'faithless directors and managers.'" *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 95 (1991) (quoting *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548 (1949)). In addition, "[s]ettlements of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable.'" *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (quoting *Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1973)); *see also In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005). This case involved significant legal and factual issues pertaining to falsity, scienter, causation and the calculation of damages.  The difficulty of the legal and factual issues supports the requested award of attorneys' fees.

### 4.      Time, Labor and Skill Required

The record includes law firm resumes and summaries of Plaintiffs' counsel's qualifications, which reflect that Plaintiffs' counsel has significant experience and expertise in derivative and class-action litigation.  In addition, the record reflects that Plaintiffs' counsel undertook substantial efforts in this litigation, including factual and legal research, drafting pleadings and other filings, successfully opposing Defendants' motion to dismiss, engaging in discovery and reviewing documents, preparing for and participating in mediation, and successfully negotiating the Settlement.  The record reflects that Plaintiffs' counsel expended more than 2,457 hours of attorney time at the risk of

receiving little or no recovery.  The time, labor and skill required in this case supports the requested award of attorneys' fees.

### 5.     Reaction of the Settlement Class

As addressed above, the Settlement Notice advised potential Settlement Class Members that Co-Lead Counsel intended to apply for the award of attorneys' fees and service award.  Only two objections to the Settlement were received, but neither objected to the attorneys' fees.  In addition to the absence of any objections, the record reflects that Lead Plaintiffs—who were actively involved in the litigation and settlement of this Action—have considered and approved the requested attorneys' fees award.  The reaction of the Settlement Class, therefore, supports the requested award of attorneys' fees proposed.

### 6.     Comparison to Similar Cases

In total, Plaintiffs seek $1,600,000 in Attorneys' Fees.  Courts have awarded similar amounts in other class action cases that were settled through corporate governance reforms. *See, e.g.*, *In re RTI Surgical Derivative Litig.*, No. 1:20-cv-3347 (MFK), 2022 WL 1310213, at *2 (N.D. Ill. Jan. 24, 2022) (awarding attorneys' fees of $1,500,000 following class action settlement resolved with corporate governance reforms); *Cohn*, 375 F. Supp. 2d at 861 (E.D. Mo. 2005) (awarding $2,250,000 in attorneys' fees following class action settlement resolved with corporate governance reforms).  When compared to similar cases, the requested award of attorneys' fees is reasonable.

### B.     Service Award

Lead Plaintiffs seek a service award of $2,500 each, which totals $15,000.  Small incentive awards, which serve as premiums to any claims-based recovery from the Settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.  *See Yarrington*, 697 F.Supp.2d at 1068.

Unlike unnamed class members who will enjoy the benefits of the settlement without taking on any significant role, Lead Plaintiffs made significant efforts on behalf of the collective and participated actively in the litigation, including time and effort in bringing this action.  Under these circumstances, a service award of $2,500 per Lead Plaintiff is reasonable.  *See, e.g.*, *Netzel*, 2017 WL 1906955,  at *7 (finding $5,000 service award to one named-plaintiff and $3,000 to another was reasonable); *Zilhaver v. UnitedHealth Group, Inc.*, 646 F.Supp.2d 1075, 1085 (D. Minn. 2009) (awarding two lead plaintiffs $15,000 incentive awards from a common fund settlement of $17,000,000); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (awarding $100,000 collectively to a group of eight lead plaintiffs).  In light of the effort and risks undertaken to obtain the results for the class, the Court approves the service award payments to Lead Plaintiffs.

For these reasons, Plaintiffs' request for attorneys' fees in the amount of $1,600,000 and service awards to Lead Plaintiffs of $15,000, is granted.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1.    The October 25, 2023 Order, (Dkt. 56), and the October 26, 2023

Judgment, (Dkt. 57), are **VACATED** and the Clerk of Court is directed to enter an Amended Order and Amended Judgment as provided herein.

2.   Plaintiffs' Motion for Final Approval of Class Action Settlement, (Dkt. 42), is **GRANTED**.

   a.  The Settlement Agreement and Plan of Allocation are finally approved as being fair, reasonable and adequate pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

   b.  The Settlement Class is finally certified, for settlement purposes only, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

   c.  The Court confirms that the Notice provided to the Settlement Class was the best notice practicable under the circumstances and satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, and due process.

   d.  All Settlement Class Members who timely requested exclusion are excluded from the Settlement.  The Settlement Class Members who did not timely request exclusion are hereby bound by the terms of the Settlement Agreement.

   e.  The Court awards $1,600,000, plus any accrued interest, in attorneys' fees to Plaintiffs' counsel.

   f.  The Court approves service awards of $2,500 each to Riviera Beach Police Pension Fund, City of Hialeah Employees Retirement System,

Jawad A. Ayaz, Daniel Sanclemente, Harry Frashier on behalf of Bud & Sue Frashier Family Trust, and Alice Burstein for the time spent directly related to their representation of the Settlement Class.

g. The Consolidated Action is **DISMISSED with PREJUDICE**. The Parties shall bear their own fees, costs and expenses, except as provided in subparagraph 2(e) and 2(f) of this Order.

3.      Without affecting the finality of this Order and the Judgment, the Court retains jurisdiction over this matter for the purpose of resolving disputes related to the interpretation, administration, implementation, effectuation and enforcement of the Settlement.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  November 7, 2023                                s/Wilhelmina M. Wright
                                                        Wilhelmina M. Wright
                                                        United States District Judge