UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re Resideo Technologies, Inc., Derivative Litigation | Case No. 21-cv-1965 (WMW/ECW)<br><br>**SECOND AMENDED ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT** |

Plaintiffs, on behalf of themselves and the proposed Company Stockholders,[1] seek final approval of settlement against Defendants Resideo Technologies, Inc. (Resideo); Michael G. Nefkens; Joseph D. Ragan, III; Niccolo de Masi; Paul Deninger; Roger Fradin; Jack Lazar; Nina Richardson; Andrew Teichl; and Sharon Weinbar. (Dkt. 42.) On November 7, 2023, the Court issued an Amended Order[2] granting Plaintiffs' motion for final approval of settlement. Upon further review the Court amends the Amended Order to reflect an analysis under Rule 23.1, Fed. R. Civ. P.[3]

---

[1] Unless otherwise indicated, capitalized terms in this Order have the meanings ascribed to those words in the parties' February 7, 2023 Stipulation and Agreement of Settlement.

[2] The Amended Order clarifies and corrects certain aspects of the previous order and judgment, which referenced *In re Resideo Techs., Inc., Sec. Litig.*, No. 19-cv-2863 (WMW/BRT), 2022 WL 872909 (D. Minn. Mar. 24, 2022)—a separate but parallel class action lawsuit.

[3] A district court "may correct a clerical mistake or mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60.

BACKGROUND

Plaintiffs and Defendants entered into a Stipulation and Agreement of Settlement dated February 7, 2023 ("Stipulation"), which provides for a complete dismissal with prejudice of the claims against Defendants in this action, as well as a release of claims on the terms and conditions set forth in the Stipulation. The Settlement provides that Plaintiffs have agreed to settle all claims in this Action in exchange for the implementation of critical corporate governance reforms designed to, among other things, improve board oversight, ensure the accurate disclosure of information to the markets, and reduce the risk of legal and regulatory exposure. The parties reached the settlement following extensive negotiations among counsel that included mediation before now-retired United States Magistrate Judge Becky Thorson.

On February 13, 2023, the Court granted Plaintiffs' unopposed motion for preliminary approval of the Settlement. In doing so, on a preliminary basis, the Court approved the Settlement and approved the proposed notice plan. To date, two objections to the Settlement have been received. On June 22, 2023, the Court held a Settlement Hearing to determine whether the Settlement should be finally approved. Plaintiffs seek a determination that the Settlement is fair, reasonable and adequate. Plaintiffs also seek an award of attorneys' fees, litigation expenses and service awards.

ANALYSIS

I.      **Motion for Final Approval**

"A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23.1(c). Beyond this guidance, however, Rule

2

23.1, Fed. R. Civ. P., provides no substantive standard to apply in a derivative settlement. Rule 23.1, Fed. R. Civ. P., is procedural, and cannot "abridge, enlarge or modify any substantive right." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991); 28 U.S.C. § 2072(b).

The Eighth Circuit Court of Appeals has identified four factors in determining whether a settlement is fair, reasonable, and adequate:

(1) the merits of the plaintiff's case, weighed against the terms of the settlement;

(2) the defendants' financial condition;

(3) the complexity and expense of further litigation; and

(4) the amount of opposition to the settlement.

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). The most important factor is "the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *Id.* at 933. A court may also consider the adequacy of representation to ensure that the settlement is "not the product of fraud or collusion." *Id.* at 934; *see DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995). The Court considers each factor in turn.

### A. The Merits of the Plaintiff's Case, Weighed Against the Terms of the Settlement

The Court begins by considering "the merits of the plaintiff's case, weighed against the terms of the settlement." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 932. As reflected in Plaintiffs' submissions, continued litigation would involve risks that Plaintiffs would be unable to establish the elements of their claims as well as the

3

imposition of additional litigation costs and delays. In the context of the alleged wrongdoings, the Settlement provides that the Company will spend $300,000 per year for five years to continuously improve oversight to the Company's risk management and implementation of terms that are specifically designed to protect and preserve the benefits of its stockholders.

The Settlement avoids the risks, costs, uncertainties and delays of continued litigation, as detailed in Plaintiffs' submissions. *See Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) (observing that "many of the immediate and tangible benefits" of settlement would be lost through continued litigation, making the proposed settlement "an attractive resolution" of the case); *see also Allred on behalf of Aclaris Therapeutics, Inc. v. Walker*, Nos. 19-CV-10641 (LJL), 19-cv-10876 (LJL), 2021 WL 5847405, at *4 (S.D.N.Y Dec. 9, 2021) ("Reforms addressing the issues giving rise to the derivative suit are exactly the type courts deem to confer a substantial benefit on the company").

Here, the Reforms are specifically designed to minimize the probability of violations of fiduciary duties and federal securities laws in the future. *See Mills v. Electro Auto-Lite Co.*, 396 U.S. 375, 396-97 (1970); *see also Friedman v. Baxter Travenol Labs., Inc.*, No. Civ. A. 8209, 1986 WL 2254, at *5 (Del. Ch. Feb.18, 1986) (observing that achievement of specific, tangible and long-term corporate governance reforms in stockholder litigation is valuable). Resideo has agreed to maintain these Reforms for a minimum of three years, which is a meaningful amount of time to ensure that the measures become embedded in the company's policies, practices and corporate culture. *Cohn*

4

*v. Nelson*, 375 F. Supp. 2d 844, 850 (E.D. Mo. 2005) (finding that corporate governance measures which must be in place for no fewer than three years will "provide meaningful ways of avoiding the problems [the company] experienced in the recent past"). Accordingly, this factor weighs in favor of approving the Settlement.

### B. The Defendants' Financial Condition

The Court evaluates the Defendants' financial condition. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 932. The parties agree and the Court concludes that Defendants have the financial ability to pay more than the Settlement. This fact, however, does not render the settlement inadequate. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir.1999); *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1157 (D. Minn. 2009). The Court finds the defendants' financial condition weighs in favor of approval.

### C. The Complexity and Expense of Further Litigation

The Court next reviews "the complexity and expense of continued litigation." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 932. Here, the complexity and expense of continued litigation are significant. As described in Plaintiffs' submissions, Defendants likely would advance numerous defenses, and continued litigation would result in considerable time and expense. If the Settlement is approved, this case will be resolved before the parties invest time and resources on further litigation, including summary judgment, trial, and possible appeals. The nature of the litigation to date and the certainty of continued complex and expensive proceedings weigh in favor of approval of the Settlement.

**D.     The Amount of Opposition to the Settlement.**

The Court also considers the amount of opposition to the settlement. *Id*. The Settlement provides reforms to the Company's corporate governance. To date, only two investors have objected to the Settlement. The objections pertain to the Settlement's diversity requirements. But the objections are procedurally deficient as they do not meet the requirements of the Settlement notice because the objectors fail to provide evidence of when their shares were acquired. The Court, therefore, need not address these non-compliant objections, and the objections are overruled. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752, 2020 WL 4212811, at *14 (N.D. Cal. July 22, 2020), aff'd, 2022 WL 2304236 (9th Cir. June 27, 2022) (finding that the court need not consider noncompliant objections that fail to provide required information). The Court, nonetheless, observes that diversity requirements on boards are a proper component of the Settlement terms. *See In re Conduent Inc. S'holder Deriv. Litig.*, 1:20-cv-10964-MKV (S.D.N.Y. June 10, 2022) (settlement required company to consider at least one member of an unrepresented community whenever the board seeks candidates for the nomination of non-incumbent directors). Ultimately, the overwhelming majority of investors have offered no objection. As such, this factor also weighs in favor of the Settlement.

**E.     Adequacy of Representation**

Finally, the Court considers whether the Company Stockholders have been adequately represented. In doing so, the Court may consider the experience and opinion of counsel on both sides, whether the settlement resulted from arm's-length negotiations, and whether a skilled mediator was involved. *DeBoer*, 64 F.3d at 1178. The record reflects

no conflicts between Lead Plaintiffs and the Company Stockholders, whose claims are aligned. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459–60 (2013) (observing that the class would "prevail or fail in unison" because claims were based on common misrepresentations and omissions). Co-Lead Counsel are qualified and experienced in derivative litigation and extensively litigated this case. The Lead Plaintiffs also have supervised and participated in the litigation by communicating with counsel, reviewing pleadings and motions, and participating in settlement discussions.

The Settlement was negotiated at arm's length, *DeBoer*, 64 F.3d at 1178, and was reached after months of negotiations between experienced counsel, including a full-day mediation before now-retired Magistrate Judge Thorson. The record reflects that, at the time of the settlement negotiations, Lead Plaintiffs and Co-Lead Counsel knew the strengths and weaknesses of their claims based on extensive investigation, research, discovery and litigation. For these reasons, the Court finds that the Settlement was negotiated at arm's length and under circumstances that demonstrate a lack of collusion. The record reflects that Lead Plaintiffs and Co-Lead Counsel have adequately represented the Company Stockholders. This factor, therefore, weighs in favor of approving the Settlement.

In summary, after considering all of the relevant factors, the Court concludes that the Settlement is fair, reasonable and adequate.

## II. Attorneys' Fees, Litigation Expenses and Service Awards

As part of the final approval of settlement, Plaintiffs seek attorneys' fees in the amount of $1,600,000, and service awards in the aggregate amount of $15,000 to compensate Named Plaintiffs.

### A. Attorneys' Fees

An award of attorneys' fees in a lawsuit is within the discretion of the district court. *Petrovic*, 200 F.3d at 1157. To determine whether a requested fee is reasonable, the Court considers the following factors: (1) the benefit conferred; (2) the risks to which plaintiffs' counsel were exposed; (3) the novelty and difficulty of the issues; (4) the time, labor and skill required; (5) the reaction of the class; and (6) the comparison between the requested percentage and percentages awarded in similar cases. *In re Resideo Techs., Inc., Sec. Litig.*, No. 19-cv-2863 (WMW/BRT), 2022 WL 872909, at *6 (D. Minn. Mar. 24, 2022). Where the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference. *Cohn*, 375 F. Supp. 2d at 862; *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (observing that an agreed-to fee is an ideal situation because "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."); *In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 568–70 (7th Cir.1992) (approving agreed-to fees that were negotiated based on market rates).

#### 1. Benefit Conferred on Company Stockholders

While the economic value of the Reforms cannot be calculated with precision, empirical studies and survey literature show a correlation between strong governance and

8

stock performance. *See In re Schering-Plough Corp. S'holders Deriv. Litig.*, No. CIV. A. 01-1412, 2008 WL 185809, at *5 (D.N.J. Jan. 14, 2008) ("The adoption of the corporate governance and compliance mechanisms required by the settlement can prevent breakdowns in oversight that would otherwise subject the company to the risk of regulatory action . . . . Effective corporate governance can also affect stock price by bolstering investor confidence and improving consumer perceptions"). The attorneys' fees requested, therefore, reflect only a portion of the value of the benefit the Settlement confers on Resideo and its stockholders.

Moreover, courts have endorsed the agreement of the amount of attorneys' fees to be paid to plaintiffs' counsel in representative litigation. *E.g., Hensley*, 461 U.S. at 437. Where the fee negotiations were conducted at arm's-length and there is no evidence of collusion, courts accord "substantial deference" to the parties' agreement. *Cohn*, 375 F. Supp. 2d at 861.

### 2. Risks to Plaintiffs' Counsel

Plaintiffs' counsel worked on a contingent basis and have received no compensation to date. As addressed above and as detailed in Plaintiffs' submissions, Plaintiffs' counsel faced significant litigation risks. Even if Plaintiffs were to prevail at trial, they would face the risks associated with any appeal. The substantial risks to Plaintiffs' counsel support the requested award of attorneys' fees.

### 3. Difficulty of Legal and Factual Issues

Under both Minnesota and federal law, the purpose of a derivative action is "to place in the hands of the individual shareholder a means to protect the interests of the corporation

from the misfeasance and malfeasance of the 'faithless directors and managers.'" *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 95 (1991) (quoting *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548 (1949)). In addition, "[s]ettlements of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable.'" *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (quoting *Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1973)); *see also In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005). This case involved significant legal and factual issues pertaining to falsity, scienter, causation and the calculation of damages. The difficulty of the legal and factual issues supports the requested award of attorneys' fees.

### 4. Time, Labor and Skill Required

The record includes law firm resumes and summaries of Plaintiffs' counsel's qualifications, which reflect that Plaintiffs' counsel have significant experience and expertise in derivative and class-action litigation. In addition, the record reflects that Plaintiffs' counsel undertook substantial efforts in this litigation, including factual and legal research, drafting pleadings and other filings, engaging in discovery and reviewing documents, preparing for and participating in mediation, and successfully negotiating the Settlement. The record reflects that Plaintiffs' counsel expended more than 2,457 hours of attorney time at the risk of receiving little or no recovery. The time, labor and skill required in this case supports the requested award of attorneys' fees.

### 5. Reaction of the Company Stockholders

As addressed above, the Settlement Notice advised the Company Stockholders that Co-Lead Counsel intended to apply for the award of attorneys' fees and service award. Only two objections to the Settlement were received, but neither objected to the attorneys' fees. In addition to the absence of any objections, the record reflects that Lead Plaintiffs—who were actively involved in the litigation and settlement of this Action—have considered and approved the requested attorneys' fees award. The reaction of the Company Stockholders, therefore, supports the requested award of attorneys' fees proposed.

### 6. Comparison to Similar Cases

In total, Plaintiffs seek $1,600,000 in attorneys' fees. Courts have awarded similar amounts in other cases that were settled through corporate governance reforms. *See, e.g.*, *In re RTI Surgical Derivative Litig.*, No. 1:20-cv-3347 (MFK), 2022 WL 1310213, at *2 (N.D. Ill. Jan. 24, 2022) (awarding attorneys' fees of $1,500,000 following settlement resolved with corporate governance reforms); *Cohn*, 375 F. Supp. 2d at 861 (E.D. Mo. 2005) (awarding $2,250,000 in attorneys' fees following class action settlement resolved with corporate governance reforms). When compared to similar cases, the requested award of attorneys' fees is reasonable.

### B. Service Award

Lead Plaintiffs seek a service award of $2,500 each, which totals $15,000. Small incentive awards, which serve as premiums to any claims-based recovery from the

Settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *Yarrington*, 697 F.Supp.2d at 1068.

Unlike unnamed members who will enjoy the benefits of the settlement without taking on any significant role, Lead Plaintiffs made significant efforts on behalf of the collective and participated actively in the litigation, including time and effort in bringing this action. Under these circumstances, a service award of $2,500 per Lead Plaintiff is reasonable. *See, e.g.*, *Netzel*, 2017 WL 1906955, at *7 (finding $5,000 service award to one named-plaintiff and $3,000 to another was reasonable); *Zilhaver v. UnitedHealth Group, Inc.*, 646 F.Supp.2d 1075, 1085 (D. Minn. 2009) (awarding two lead plaintiffs $15,000 incentive awards from a common fund settlement of $17,000,000); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (awarding $100,000 collectively to a group of eight lead plaintiffs). In light of the effort and risks undertaken to obtain the results for the Company Stockholders, the Court approves the service award payments to Lead Plaintiffs.

For these reasons, Plaintiffs' requests for attorneys' fees in the amount of $1,600,000 and for service awards to Lead Plaintiffs of $15,000, are granted.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. The October 25, 2023 Order, (Dkt. 56), the October 26, 2023 Judgment, (Dkt. 57), the November 7, 2023 Amended Order (Dkt. 58), and the November 7, 2023 Amended Judgment (Dkt. 59) are are **VACATED** and the Clerk of Court is directed to

enter a Second Amended Order and Amended Judgment as provided herein.

2. Plaintiffs' Motion for Final Approval of Settlement, (Dkt. 42), is **GRANTED**.

    a. The Settlement Agreement is finally approved as being fair, reasonable and adequate pursuant to Rule 23.1 of the Federal Rules of Civil Procedure.

    b. The Court confirms that the Notice provided to Company Stockholders was the best notice practicable under the circumstances and satisfied the requirements of Federal Rule of Civil Procedure 23.1, and due process.

    c. Company Stockholders are bound by the terms of the Settlement Agreement.

    d. The Court awards $1,600,000, plus any accrued interest, in attorneys' fees to Plaintiffs' counsel.

    e. The Court approves service awards of $2,500 each to Riviera Beach Police Pension Fund, City of Hialeah Employees Retirement System, Jawad A. Ayaz, Daniel Sanclemente, Harry Frashier on behalf of Bud & Sue Frashier Family Trust, and Alice Burstein for the time spent directly related to their representation of the Company Stockholders.

    f. The Consolidated Action is **DISMISSED with PREJUDICE**. The Parties shall bear their own fees, costs and expenses, except as provided in subparagraph 2(d) and 2(e) of this Order.

3. Without affecting the finality of this Order and the Judgment, the Court retains jurisdiction over this matter for the purpose of resolving disputes related to the interpretation, administration, implementation, effectuation and enforcement of the Settlement.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 9, 2024                                                          s/Wilhelmina M. Wright
                                                                                                            Wilhelmina M. Wright
                                                                                                            United States District Judge